KING v. BRYANT

[225 N.C. App. 340 (2013)]

ROBERT E. KING AND WIFE, JO ANN O'NEAL, PLAINTIFFS
V.
MICHAEL S. BRYANT, M.D. AND VILLAGE SURGICAL ASSOCIATES, P.A., DEFENDANTS

No. COA12-918

Filed 5 February 2013

**1. Appeal and Error—interlocutory orders—substantial right—denial of motion to compel arbitration**

The denial of a motion to compel arbitration, although interlocutory, is immediately appealable because it affects a substantial right.

**2. Arbitration and Mediation—Federal Arbitration Act— medical malpractice**

To the extent the parties entered into a valid agreement to arbitrate in a medical malpractice case, federal law and the provisions of the Federal Arbitration Act governed.

**3. Arbitration and Mediation—indefiniteness—failure to agree on panel of arbitrators**

The trial court erred in a medical malpractice case by concluding that the parties' arbitration agreement was too indefinite to be enforced. The failure of the parties to agree on a panel of arbitrators did not render the agreement indefinite.

**4. Appeal and Error—preservation of issues—failure to raise at trial**

Although plaintiffs' wanted the Court of Appeals to address the issues in a medical malpractice case that the parties' agreement was unconscionable and that the agreement was inapplicable to Ms. O'Neal's loss of consortium claim, it declined because the trial court has not yet ruled on these questions and needed to make findings of fact.

Appeal by defendants from order entered 23 March 2012 by Judge Lucy N. Inman in Cumberland County Superior Court. Heard in the Court of Appeals 13 December 2012.

*Patterson Harkavy LLP, by Burton Craige and Narendra K. Ghosh, and Beaver Holt Sternlicht & Courie P.A., by Mark A. Sternlicht, for plaintiff-appellee.*

*Walker, Allen, Grice, Ammons & Foy, L.L.P., by O. Drew Grice, Jr., for defendant-appellants.*

HUNTER, JR., Robert N., Judge.

Michael S. Bryant, M.D. ("Dr. Bryant") and Village Surgical Associates, P.A. (collectively, "Defendants") appeal from an order of the Cumberland County Superior Court denying their "Motion to Stay Proceedings and Enforce Arbitration Agreement." For the following reasons, we reverse and remand.

## I. Factual and Procedural History

This appeal arises out of a medical malpractice suit brought by Robert E. King and his wife, Jo Ann O'Neal (collectively, "Plaintiffs"). On 14 May 2009, Mr. King underwent a surgical procedure to repair a bilateral inguinal hernia at Fayetteville Ambulatory Surgery Center. During the procedure, Dr. Bryant inserted a trochar into Mr. King's abdomen and injured his aorta, causing extensive bleeding. Dr. Bryant was able to stop the bleeding and repair the injured aorta. After the surgery, Mr. King was transferred to Cape Fear Valley Health Systems for further care, including an additional surgical procedure to address complications from the injury to his aorta. Mr. King remained hospitalized until 26 May 2009.

Plaintiffs filed suit on 28 September 2011, alleging medical malpractice on the part of Dr. Bryant and seeking recovery from Defendants for medical expenses, lost wages, physical injuries, pain and suffering, and Ms. O'Neal's loss of consortium. In response to Plaintiffs' complaint, Defendants filed their answer and a "Motion to Stay Proceedings and Enforce Arbitration Agreement." In it, Defendants sought enforcement of an "Agreement to Alternative Dispute Resolution" ("the Agreement") executed by Mr. King prior to his hernia surgery. The Agreement read in pertinent part as follows:

Agreement To Alternative Dispute Resolution

In accordance with the terms of the Federal Arbitration Act, 9 USC 1-16, I agree that any dispute arising out of or related to the provision of healthcare services by me, by Village Surgical Associates, PA, or its employees,

physician members and agents, shall be subject to final and binding resolution through private arbitration.

The parties to this Agreement shall agree upon three Arbitrators and at least one arbitrator of the three shall be a physician licensed to practice medicine and shall be board certified in the same specialty as the physician party. The remaining Arbitrators either shall be licensed to practice law in NC or licensed to practice medicine in NC. The parties shall agree upon all rules that shall govern the arbitration, but may be guided by the Health Care Claim Settlement Procedures of the American Arbitration Association, a copy of which is available to me upon request. I understand that this agreement includes all health care services which previously have been or will in the future be provided to me, and that this agreement is not restricted to those health care services rendered in connection with any particular treatment, office or hospital admission. I understand that this agreement is also binding on any individual or entity and not a precondition to receiving health care services.

On 6 November 2011, Plaintiffs filed a response to Defendants' motion, arguing that the Agreement is unenforceable. Defendants' filed their "Motion to Compel Arbitration" on 13 February 2012, and a hearing was held on 12 March 2012. At the conclusion of the hearing, the trial court denied Defendants' motion, concluding as a matter of law that a contract had not been formed between the parties. In its order, the trial court reasoned that:

3. The Agreement to Alternative Dispute Resolution contains provisions regarding the selection of three arbitrators and the rules that shall govern the arbitration, each of which is a material term in the formation of a contract in this case.

4. The Agreement to Alternative Dispute Resolution leaves material portions open to future agreements by providing, *inter alia*, that the parties shall agree upon three arbitrators and that the parties shall agree upon all rules that shall govern the arbitration.

5. At most, the Agreement to Alternative Dispute Resolution is an "agreement to agree" that is indefinite

and depends on one or more future agreements. [citation omitted]

6. The Agreement to Alternative Dispute Resolution is not a binding contract and is not enforceable.

The trial court "[did] not address or rule upon any issues that pertain to plaintiffs' alternative claims that the Agreement . . . is unenforceable due to procedural and substantive unconscionability," or the issue of whether Ms. O'Neal's loss of consortium claim would be subject to the Agreement if it were enforceable. Defendants gave timely written notice of appeal on 10 April 2012.

## II. Jurisdiction & Standard of Review

[1] North Carolina law generally permits a party to appeal only from a *final* judgment of the superior court. *See Veazey v. Durham*, 231 N.C. 357, 361–63, 57 S.E.2d 377, 381–82 (1950). A final judgment is defined as " 'one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court.' " *Duval v. OM Hospitality, LLC*, 186 N.C. App. 390, 392, 651 S.E.2d 261, 263 (2007) (quoting *Veazey*, 231 N.C. at 361-62, 57 S.E.2d at 381). However, the North Carolina General Statutes additionally permit an aggrieved party in a civil proceeding to appeal "[f]rom any interlocutory order or judgment of a superior or district court which . . . [a]ffects a substantial right." N.C. Gen. Stat. § 7A-27(d)(1) (2011).

Here, the trial court's order is not a final disposition of this case; thus, it is interlocutory. *See Veazey*, 231 N.C. at 362, 57 S.E.2d at 381. However, our courts have held "that the denial of a motion to compel arbitration, although interlocutory, is nevertheless immediately appealable, as it affects a substantial right." *See Barnhouse v. Am. Express Fin. Advisors, Inc.*, 151 N.C. App. 507, 508, 566 S.E.2d 130, 131 (2002). Therefore, we have jurisdiction to hear Defendants' appeal.

A trial court's determination that an action is subject to arbitration is a conclusion of law which we review *de novo*. *See Carter v. TD Ameritrade Holding Corp.*, ___ N.C. App. ___, ___, 721 S.E.2d 256, 260 (2012). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

## III. Analysis

**[2]** Preliminarily, we note that the trial court made no determination in its order as to whether state or federal arbitration law governs administration of the Agreement. This Court has recently explained that it is incumbent upon a trial court when considering a motion to compel arbitration to "address whether the Federal Arbitration Act ('FAA') or the North Carolina Revised Uniform Arbitration Act [('NCRUAA')] applies" to any agreement to arbitrate. *Cornelius v. Lipscomb*, ___ N.C. App. ___, ___, 734 S.E.2d 870, 872 (2012) (citing *Sillins v. Ness*, 164 N.C. App. 755, 757, 596 S.E.2d 874, 876 (2004) (noting that a determination as to whether the FAA applies "is critical because the FAA preempts conflicting state law")).

Congress enacted the FAA, 9 U.S.C. § 1 et seq., "[t]o overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), and to declare "a national policy favoring arbitration of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (quotation marks and citation omitted). The FAA "is enforceable in both state and federal courts," *Perry v. Thomas*, 482 U.S. 483, 489 (1987), and "will apply if the contract evidences a transaction involving interstate commerce." *Hobbs Staffing Servs., Inc. v. Lumbermens Mut. Cas. Co.*, 168 N.C. App. 223, 226, 606 S.E.2d 708, 711 (2005); *see also Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 273-81 (1995) (discussing factors to consider in determining whether an agreement "involves interstate commerce"). If the FAA is applicable, courts must apply it, even in the face of contractual provisions calling for the application of state law. *See Burke Cty. Bd. of Educ. v. Shaver P'ship*, 303 N.C. 408, 424, 279 S.E.2d 816, 825 (1981) ("We conclude . . . the choice of law provision in the contract does not preclude application of the Federal Arbitration Act.").

"Whether a contract evidenced a transaction involving commerce within the meaning of the [FAA] is a question of fact" for the trial court. *Eddings v. S. Orthopaedic & Musculoskeletal Assocs.*, 167 N.C. App. 469, 474, 605 S.E.2d 680, 683 (2004) (quotation marks and citation omitted) (alteration in original). Accordingly, this Court typically "cannot make th[e] determination [as to what law applies] in the first instance on appeal; it is a question to be decided by the trial court." *Cornelius*, ___ N.C. App. at ___, 734 S.E.2d at 872.

In the instant case however, it is clear that the FAA governs the parties' agreement, for even if we apply state law, the parties' choice

of law is controlling. Our courts have long recognized that " '[t]he parties' choice of law is generally binding on the interpreting court as long as they had a reasonable basis for their choice and the law [chosen] does not violate a fundamental public policy of the state or otherwise applicable law.' " *Torres v. McClain*, 140 N.C. App. 238, 241, 535 S.E.2d 623, 625 (2000) (quoting *Behr v. Behr*, 46 N.C. App. 694, 696, 266 S.E.2d 393, 395 (1980)) (first alteration in original). Although our courts have recognized that choice of law provisions seeking to avoid application of the FAA are invalid, *See Burke Cty. Bd. of Educ.*, 303 N.C. at 424, 279 S.E.2d at 825, we can find no case holding that parties may not affirmatively choose the FAA to govern an agreement to arbitrate.

It is clear then that the provisions of the FAA apply in any event, as per the unambiguous language of the Agreement, which reads:

> In accordance with the terms of the Federal Arbitration Act, 9 USC 1-16, I agree that any dispute arising out of or related to the provision of health care services . . . shall be subject to final and binding resolution through private arbitration.

This language clearly suggests that the parties intended the FAA to govern administration of the Agreement. Accordingly, to the extent the parties have entered into a valid agreement to arbitrate, federal law and the provisions of the FAA will govern.

### A. Indefiniteness

*1. Identity of Arbitrators*

[3] Defendants argue on appeal that the trial court erred in concluding the Agreement between the parties was too indefinite to be enforced. We agree.

As a general matter, the public policy of our State favors arbitration. *See, e.g., Johnston Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992) (noting North Carolina's "strong public policy" in favor of resolving disputes by arbitration). That being said, "this public policy does not come into play unless a court first finds that the parties entered into an enforceable agreement to arbitrate." *Evangelistic Outreach Ctr. v. Gen. Steel Corp.*, 181 N.C. App. 723, 726, 640 S.E.2d 840, 843 (2007) (quotation marks and citation omitted). "The law of contracts governs the issue of whether there exists an agreement to arbitrate." *Routh v. Snap-On Tools Corp.*, 108 N.C.

App. 268, 271, 423 S.E.2d 791, 794 (1992).[1] Accordingly, the party seeking to compel arbitration must demonstrate that the parties "mutually agreed to arbitrate their disputes." *Id.* at 271-72, 423 S.E.2d at 794.

In the instant case, there was clearly an offer to arbitrate any dispute which arose out of Defendants' provision of medical care, as well as an acceptance of that offer by Mr. King. This Court has established that mutual promises to submit a dispute to arbitration constitute adequate consideration. *Martin v. Vance*, 133 N.C. App. 116, 122, 514 S.E.2d 306, 310 (1999). Nevertheless Plaintiffs argue, and the trial court concluded, that the Agreement is too indefinite to be enforced, because it "leaves material portions open to future agreements by providing, *inter alia*, [1] that the parties shall agree upon three arbitrators and [2] that the parties shall agree upon all rules that shall govern the arbitration."

This conclusion, however, ignores the provisions of the FAA, which the parties have agreed would govern any arbitration. The FAA contemplates situations where parties are unable to agree on a slate of arbitrators, as is the case here:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; *but . . . if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators* or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (2011) (emphasis added). Thus, the FAA provides the trial court authority to appoint a panel of arbitrators if the parties cannot

---

1. This is the case regardless of venue. *See* 1 Martin Domke, *Domke on Commercial Arbitration* § 8:9 (3d ed. 2012) ("A federal court should look to the state law that ordinarily governs the formation of contracts to determine whether a valid agreement to arbitrate arose between the parties.").

come to an agreement. Accordingly, the failure of the parties to agree on a panel of arbitrators does not render the Agreement indefinite.[2]

## 2. Procedures

Plaintiffs note that the FAA does not provide a similar provision discussing the *procedure* by which an arbitration is to be conducted in light of the parties' inability to agree on a procedure.[3] However, arbitrators are typically given wide discretion in determining the procedures under which the arbitration will be conducted. The United States Supreme Court has observed that "when the subject matter of a dispute is arbitrable, 'procedural' questions which grow out of the dispute and bear on its final disposition are to be left to the arbitrator." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). Therefore, the arbitrators may establish procedures to the extent the parties cannot agree.

Thus, we reject Plaintiffs' argument that the Agreement is insufficiently definite to be enforced. Accordingly, we reverse the trial court's order concluding otherwise.

## B. Unconscionability and Non-Signatory Issues

[4] The trial court's order did not address Plaintiffs' other two arguments: (1) that the Agreement is unconscionable and (2) that the Agreement is inapplicable to Ms. O'Neal's loss of consortium claim. Both parties have requested that we address these issues on appeal. However, the trial court has not yet ruled on these questions, and we decline to address them in the absence of the trial court having made findings of fact supporting a ruling. For the benefit of the parties and the trial court, we will briefly discuss the law the trial court should apply on remand.

As a threshold matter, we note that under the facts of this case, where Plaintiffs challenge the validity of the precise arbitration agreement at issue, and not their broader agreement regarding the provision of medical services, federal law dictates that the trial court

---

2. We note that even if the Agreement was governed by state law, a similar provision exists in the NCRUAA. *See* N.C. Gen. Stat. § 1-569.11(a) (2011) ("If . . . the agreed method fails . . . the court, on motion of a party to the arbitration proceeding, shall appoint the arbitrator.").

3. The Agreement states that the parties "may be guided by the Health Care Claim Settlement Procedures of the American Arbitration Association," but imposes no affirmative duty on them to agree to use those procedures.

is the appropriate body to determine whether the agreement is unconscionable. *See Rent-A-Center, West, Inc. v. Jackson,* \_\_\_ U.S. \_\_\_, \_\_\_, 130 S. Ct. 2772, 2778–79 (2010). Furthermore, "state law generally governs issues concerning the validity, revocability, and enforcement of arbitration agreements." *Ragan v. Wheat First Sec., Inc.,* 138 N.C. App. 453, 456, 531 S.E.2d 874, 877 (2000) (citing *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681 (1996) (holding that generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA)). Accordingly, the trial court should apply North Carolina's law of unconscionability on remand, a recent summary of which may be found in *Tillman v. Comm. Credit Loans, Inc.,* 362 N.C. 93, 655 S.E.2d 362 (2008).[4]

We also note that any unconscionability analysis in this case must be undertaken with an understanding of the unique nature of the physician/patient relationship. As the authoritative treatise on commercial arbitration notes:

> While nearly every court to consider the issue has concluded that medical malpractice claims can properly be submitted to arbitration, issues have been raised as to patients' understanding of arbitration contracts and the potentially coercive circumstances under which the agreements are made. The use of arbitration clauses in contracts for healthcare services is distinct from their use in settling labor or commercial disputes because the legal relationship between provider and patient is determined by both private contract law and public tort law. There is tension between contract law, the principles of which have been applied to binding arbitration clauses in labor, and commercial agreements for years and the application of tort law to enforce conformity with standards of care desired by society, particularly standards of professional care.

1 Martin Domke, *Domke on Commercial Arbitration* § 16:16 (3d ed. 2012).

---

4. North Carolina law should also be applied by the trial court in resolving whether Ms. O'Neal is bound by any agreement to arbitrate. *See* 1 Martin Domke, *Domke on Commercial Arbitration* § 13:1 n.3 (3d ed. 2012) ("State law contract principles will be applied in determining whether a nonsignatory to an agreement is properly considered a party to arbitration under the [FAA]." (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411 (4th Cir. 2000))).

These considerations are particularly important given the fact that the physician/patient relationship is a fiduciary one. *See Watts v. Cumberland Cty. Hosp. Sys., Inc.*, 317 N.C. 110, 116, 343 S.E.2d 879, 884 (1986) (recognizing "that the relationship of patient and physician is considered to be a fiduciary one, imposing upon the physician the duty of good faith and fair dealing" (quotation marks and citation omitted)). Inherent in any fiduciary relationship is an affirmative duty "to disclose all facts material to a transaction." *Jacobs v. Physicians Weight Loss Center of Am., Inc.*, 173 N.C. App. 663, 668, 620 S.E.2d 232, 236 (2005).

Under North Carolina law, fiduciary relationships create a rebuttable presumption that the plaintiff put his trust and confidence in the defendant as a matter of law. Once a presumptive fiduciary relationship is alleged, it is the *defendant* who bears the burden of showing he or she "act[ed] openly, fairly and honestly in bringing about [the transaction]." N.C.P.I.—Civ. 800.06 (2011); *see also Collier v. Bryant*, ___ N.C. App. ___, ___, 719 S.E.2d 70, 81 (2012) ("After the plaintiff has established a *prima facie* case of the existence of a fiduciary duty, and its breach, the burden shifts to the defendant to prove he acted in an open, fair and honest manner, so that no breach of fiduciary duty occurred." (citation and quotation marks omitted)). "This means that the defendant must prove, by the greater weight of the evidence, that, with regard to [the transaction], the defendant made a full, open disclosure of material facts, that *he* dealt with the plaintiff fairly, without oppression, imposition or fraud, and that *he* acted honestly." N.C.P.I.—Civ. 800.06 (2011). The trial court should be mindful of this burden shifting framework in evaluating Plaintiffs' argument that the Agreement is unconscionable.

---

The North Carolina Constitution provides a "sacred and inviolable" right to a jury trial "[i]n all controversies at law respecting property, [as] the ancient mode of trial by jury is one of the best securities of the rights of the people." N.C. Const. art. I, § 25; *see also Rhyne v. K-Mart Corp.*, 358 N.C. 160, 176, 594 S.E.2d 1, 12 (2004) ("Without question, vested rights of action are property, just as tangible things are property. A right to sue for *an injury* is a right of action; it is a thing in action, and is property." (citations and quotation marks omitted)). Of course, individuals may waive their right to a civil jury trial by agreement. However, any waiver must be examined cautiously, especially in situations in which a fiduciary relationship is present, as is the case here.

## IV. Conclusion

For the foregoing reasons, we reverse the order of the trial court denying Defendants' Motion to Enforce Arbitration Agreement and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Judges BRYANT and STROUD concur.