Justice NEWBY
dissenting.
The United States Supreme Court has repeatedly held that arbitration agreements may not be invalidated by state-law defenses arising from the fact that an arbitration agreement is at issue. Congress has explicitly indicated that arbitration is to be favored. Despite these mandates, the majority invents a new defense to enforcement of an arbitration agreement, not raised by plaintiff below, to mask their disparate treatment of and continued hostility towards arbitration, thereby attempting to *475 circumvent an unconscionability analysis. Startlingly, without argument or findings, the majority baldly asserts that the Federal Arbitration Act (FAA) does not apply. This jiggery-pokery is precisely the type of impermissible “rationalization” admonished by the United States Supreme Court. Such a tortured attempt to obviate the FAA fails. Because the arbitration agreement at issue here is not unconscionable and is otherwise enforceable at law, I respectfully dissent.
The majority seeks to avoid an unconscionability analysis by fabricating a contract defense not raised by plaintiff, namely the breach of a fiduciary duty.[1] Based solely on the fact that the contract in question is an arbitration agreement, which the majority contends “substantially affected [plaintiffs] legal rights,” the majority holds that “defendants violated their fiduciary duty to [plaintiff] by failing to make full disclosure of the nature and import of the arbitration agreement to him.” In their view, this breach of fiduciary duty would void the arbitration agreement ab initio. The majority asserts that “defendants benefitted by [plaintiff’s] action in signing the arbitration agreement,” and states that the language “could have been worded more clearly” and was presented “in a collection of documents, thereby creating the [ ] impression that the arbitration agreement was simply another routine document.” (Emphasis added.)
Since 1925 Congress has established that arbitration agreements are “valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” Federal Arbitration Act (FAA), ch. 213, § 2, 43 Stat. 883, 883 (1925) (codified as amended at 9 U.S.C. § 2 (2012)). The FAA “reverse[d] the longstanding judicial hostility to arbitration agreements ... and place [s them] upon the same footing as other contracts.” Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S. Ct. 1647, 1651, 114 L. Ed. 2d 26, 36 (1991). The *476 preemptive effect of the FAA may “extend even to grounds traditionally thought to exist ‘at law or in equity for the revocation of any contract.’ ” AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341, 131 S. Ct. 1740, 1747, 179 L. Ed. 2d 742, 752 (2011) (quoting Perry v. Thomas, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 2527 n.9, 96 L. Ed. 2d 426, 437 n.9 (1987) (emphasis omitted)).
Arbitration agreements may “be invalidated by ‘generally applicable contract defenses, such as fraud, duress, or unconscionability,’ but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.” Id. at 339, 131 S. Ct. at 1746, 179 L. Ed. 2d at 751 (quoting Doctor’s Assocs. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902, 909 (1996)). A court may not “rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable.” Perry, 482 U.S. at 493 n.9, 107 S. Ct. at 2527 n.9, 96 L. Ed. 2d at 437 n.9.
Contract defenses cannot be “applied in a fashion that disfavors arbitration.” Concepcion, 563 U.S. at 341, 131 S. Ct. at 1747, 179 L. Ed. 2d at 752. Such an application is not justified by state-law “rationalizations,” even when the defense could apply to other contracts. Id. at 342, 131 S. Ct. at 1747, 179 L. Ed. 2d at 752 (“In practice, of course, the [defense] would have a disproportionate impact on arbitration agreements; but it would presumably apply to [nonarbitration] contracts ... as well.”); see also id. at 342, 131 S. Ct. at 1747, 179 L. Ed. 2d at 753 (“Such [rationalizations] are not fanciful, since the judicial hostility towards arbitration that prompted the FAA had manifested itself in ‘a great variety’ of ‘devices and formulas’ declaring arbitration against public policy.” (quoting Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 406 (2d Cir. 1959))).
Contrary to well-settled law, the majority impermissibly targets arbitration agreements for disparate treatment, attempting to ignore plaintiff’s claim of unconscionability and cloaking their disfavor of arbitration under the guise of newly constructed fiduciary-relationship principles, This sort of manufactured state-law justification is a facade and cannot displace the preemptive effect of the FAA.
The purported breach of a fiduciary duty described by the majority is a procedural consideration in an unconscionability analysis. As such, any concerns arising from the circumstances under which plaintiff signed the arbitration agreement are squarely contemplated by his assertion of unconscionability, yet the majority refuses to address this defense at all. See Rite Color Chem. Co. v. Velvet Textile Co., 105 N.C. *477 App. 14, 20, 411 S.E.2d 645, 648 (1992) (“Procedural unconscionability involves ‘bargaining naughtiness,’ ” which encompasses the use of sharp practices and unequal bargaining power, (citations omitted)). Instead, the majority has taken the extraordinary step of crafting a new legal theory for plaintiff, attempting to bypass the obligation to address his unconscionability defense. Though plaintiff “should not be allowed to change his position with respect to a material matter in the course of litigation,” Ussery v. Branch Banking & Tr. Co., 368 N.C. 325, 340, 777 S.E.2d 272, 282 (2015) (quoting Whitacre P’ship v. Biosignia, Inc., 358 N.C. 1, 26, 591 S.E.2d 870, 886 (2004)), and “[i]t is not the role of the appellate court[ ]... to create [his] appeal,” Viar v. N.C. Dep’t of Transp., 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (per curiam), it seems this Court is more than willing to do so for him when arbitration is involved.
Our case law is clear that a fiduciary relationship raises a procedural hurdle, not a requirement to void the transaction. Only when a complainant alleges and establishes that a fiduciary relationship arose and that the offending party benefitted from the transaction to the detriment of the complainant, does the burden shift from the complainant to the offending party to prove that “no fraud was committed, and no undue influence or moral duress exerted.” Wachovia Bank & Tr. Co. v. Johnston, 269 N.C. 701, 711, 153 S.E.2d 449, 457 (1967) (emphasis omitted) (quoting McNeill v. McNeill, 223 N.C. 178, 181, 25 S.E.2d 615, 616-17 (1943)); see Watts v. Cumberland Cty. Hosp. Sys., Inc., 317 N.C. 110, 116, 343 S.E.2d 879, 884 (1986). The majority fails to identify any such detriment to plaintiff and instead relies on the unlawful presumption that arbitration itself is harmful. The majority’s speculation that “defendants benefitted from [plaintiff’s] action in signing the arbitration agreement by ensuring that any subsequent dispute between the parties would be resolved using the forum, procedures, and decision makers of their choice” falls well short of establishing the requisite benefit and harm. Such a “state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with” the FAA. Perry, 482 U.S. at 493 n.9, 107 S. Ct. at 2527 n.9, 96 L. Ed. 2d at 437 n.9.
Assuming without deciding that the alleged breach of fiduciary duty results in procedural unconscionability, the agreement is plainly not substantively unconscionable, and plaintiff’s defense therefore fails. The agreement contains none of the “harsh, oppressive, and ‘one-sided terms’ ” that are the hallmarks of substantive unconscionability, Rite Color Chem. Co., 105 N.C. App. at 20,411 S.E.2d at 648-49 (citations omitted), and follows the “Health Care Claim Settlement Procedures *478 of the American Arbitration Association,” governed by the FAA. Furthermore, this analysis comports with recent comprehensive appellate review of arbitration agreements. See Westmoreland v. High Point Healthcare Inc., 218 N.C. App. 76, 77-78, 721 S.E.2d 712, 715 (2012) (concluding that an arbitration agreement was valid and not unconscionable when signed among a stack of other patient intake forms for a nursing home facility). By skirting such an analysis, see id. at 79, 721 S.E.2d at 716, the majority’s new breach of fiduciary duty defense seems without limit, deprived of the traditional constraints of the unconscionability doctrine.[2]
Irrespective of whether a fiduciary relationship arose, the majority justifies handling plaintiffs arbitration agreement differently than other “routine [contract] documents” because the agreement “substantially affected [plaintiffs] legal rights.” Isolating arbitration agreements in this way plainly subjects them to impermissible scrutiny. See Concepcion, 563 U.S. at 342, 131 S. Ct. at 1747, 179 L. Ed. 2d at 752. All contracts affect legal rights; the contract at issue here designates dispute resolution through arbitration. See Am. Express Co. v. Italian Colors Rest., _ U.S. _, _, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417, 424 (2013) (“[Arbitration is a matter of contract” and “courts must ‘rigorously enforce’ arbitration agreements.” (citations omitted) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S. Ct. 1238, 1242, 84 L. Ed. 2d 158, 165 (1985)); see also Ussery, 368 N.C. at 336, 777 S.E.2d at 279 (“One who executes a written instrument is ordinarily charged with knowledge of its contents,... and he may not base his action on ignorance of the legal effect of its provisions in the absence of considerations such as fraud or mistake.” (citations omitted)); accord Westmoreland, 218 N.C. App. at 83, 721 S.E.2d at 718 (citation omitted). Either arbitration agreements are on equal footing with other “routine” contracts or they are not. The United States Supreme Court has directed that a court cannot construe arbitration “agreements] in a manner different from that in which it otherwise construes nonarbitration agreements.” Perry, 482 U.S. at 493 n.9, 107 S. Ct. at 2527 n.9, 96 L. Ed. 2d at 437 n.9.
In a strained effort to add more window dressing, the majority brazenly claims that the FAA does not apply “[g]iven the record contains no indication that the agreement between the parties constitutes a ‘transaction involving commerce,’ 9 U.S.C. § 2.” Not only have the parties not argued this point, nor has the trial court made any accompanying *479 findings, but the first line of plaintiffs arbitration agreement expressly incorporates the FAA by stating: “In accordance with the terms of the Federal Arbitration Act, 9 USC 1-16 . . . See Johnston County v. R.N. Rouse & Co., Inc., 331 N.C. 88, 92-93, 414 S.E.2d 30, 33 (1992) (discussing the incorporation of law into contracts); Pike v. Wachovia Bank & Tr. Co., 274 N.C. 1, 16, 161 S.E.2d 453, 465 (1968) (“[L]aws in force at the time of the execution of a contract become a part of the contract.”); see also Perry, 482 U.S. at 490, 107 S. Ct. at 2526, 96 L. Ed. 2d at 436 (The FAA’s ambit is expansive and “embodies Congress’ intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause.”). Moreover, such professional service contracts generally “involve commerce” under the broad purview of the FAA.[3]
In sum, plaintiff raised his contract defenses and received the benefit of asserting them.[4] The arbitration agreement is not substantively unconscionable, and plaintiffs defense therefore fails. Apparently unsatisfied with this result, the majority, once again, impermissibly targets arbitration agreements. E.g., Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 114, 655 S.E.2d 362, 377 (2008) (Newby, J., dissenting) (“The majority finds the agreement unconscionable based on provisions that would only exist in an arbitration agreement." (emphasis added)); see also Torrence v. Nationwide Budget Fin., 232 N.C. App. 306, 321, 753 S.E.2d 802, 811 (concluding that Tillman conflicts with United States Supreme Court precedent), disc. rev. denied and cert. denied, 367 N.C. 505, 759 S.E.2d 88 (2014). Such a policy decision is not for this Court to determine. See Perry, 482 U.S. at 493 n.9, 107 S. Ct. at 2527 n.9, 96 L. Ed. 2d at 437 n.9 (A court may not construe arbitration agreements differently or “rely on the[ir] uniqueness... as a basis” for a contract defense, “for this would enable the court to effect what... the state legislature cannot.”). Instead of pursuing its relentless assault on the FAA, the majority should follow the principles clearly expressed by the United States Supreme Court. Because the majority has concocted a new contract defense in a fashion that disfavors arbitration in contravention of the FAA and binding United States Supreme Court precedent, I respectfully dissent.

. Though plaintiffs are Robert E. King and wife Jo Ann O’Neal, the record reflects Mr. King was the primary actor in the following events, and I refer to him in the singular as “plaintiff.”
Plaintiff never raised a “breach of fiduciary duty” defense to enforcement of the agreement. At the trial court, plaintiff opposed defendants’ motion to compel arbitration on three grounds: that the arbitration agreement was (1) “not a contract” but an unenforceable “agreement to agree,” (2) ineffective as to co-plaintiff’s consortium claim for lack of her signature, and (3) unconscionable. The trial court denied defendants’ motion on the first ground. Only on interlocutory appeal did the Court of Appeals, not plaintiff, mention “fiduciary relationship” as a procedural consideration for plaintiff’s burden of proof under his unconscionability defense on remand. King v. Bryant, 225 N.C. App. 340, 349, 737 S.E.2d 802, 809 (2013).

. For example, is there always a breach of fiduciary duty by a professional who does not adequately explain arbitration, and is the required result that the agreement is void ab initio?

. See, e.g., Morrison v. Colo. Permanente Med. Grp., 983 F. Supp. 937, 943-44 (D. Colo. 1997) (finding a patient-physician “medical services agreement” evidenced a “transaction involving commerce”); Exporte Lorance, 669 So. 2d 890, 892 (Ala. 1995) (finding a physician’s professional services contract “involve[es] commerce”); Vicksburg Partners, L.P. v. Stephens, 911 So. 2d 507, 515-16 (Miss. 2005) (same for patient’s “nursing home admissions agreement”), overruled in part on other grounds by Covenant Health & Rehab., LP v. Estate of Moulds, 14 So. 3d 695, 706 (Miss. 2009).

. Plaintiffs remaining contract defenses are not before the Court at this time.