IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-9

Filed: 15 December 2015

Wake County, No. 14 CVS 4465

RICARDO L. BAILEY, Plaintiff,

v.

FORD MOTOR COMPANY, FORD MOTOR CREDIT COMPANY, LLC, and KATHLEEN BURNS, individually, Defendants.

Appeal by defendant from order entered on 20 August 2014 by Judge Elaine M. Bushfan in Superior Court, Wake County. Heard in the Court of Appeals on 4 June 2015.

*Sharpless & Stavola, P.A., by Pamela S. Duffy, for plaintiff-appellee.*

*Kilpatrick Townsend & Stockton LLP, by Adam H. Charnes and Chris W. Haaf, and Williams Mullen, by M. Keith Kapp, for defendant-appellant.*

STROUD, Judge.

Ford Motor Company ("defendant") appeals from an order denying its motion to compel arbitration and dismiss. Defendant specifically argues that the trial court erred in concluding that (1) the Federal Arbitration Act ("FAA") did not apply to this dispute; (2) the parties had agreed that a court, instead of an arbitrator, would decide the arbitrability of plaintiff's claims; and (3) that plaintiff's claims were not arbitrable. We reverse.

I.    Background

In February 2003, Ricardo L. Bailey ("plaintiff"), an employee of defendant, moved to Sanford to operate and invest in a car dealership. Plaintiff and defendant executed a Stock Redemption Plan Dealer Development Agreement ("the Dealer Development Agreement") in which plaintiff invested $180,000 in exchange for 1,800 shares of common stock in the dealership and defendant invested $1,080,000 in exchange for 10,800 shares of preferred stock in the dealership. Under the agreement, defendant also loaned $540,000 to the dealership.

Under article 10 of the Dealer Development Agreement, plaintiff and defendant agreed to arbitrate any dispute "arising out of or relating to" the agreement:

> 10.01. Resolution of Disputes. If a dispute arises between [plaintiff] and [defendant] arising out of or relating to this Agreement, the following procedures shall be implemented in lieu of any judicial or administrative process:
>
> (a) Any protest, controversy, or claim by [plaintiff] (whether for damages, stay of action or otherwise) with respect to any termination of this Agreement, or with respect to any other dispute between [plaintiff] and [defendant] arising out of or relating to this Agreement shall be appealed by [plaintiff] to the Ford Motor Company Dealer Policy Board (the "Policy Board") within fifteen (15) days after [plaintiff's] receipt of notice of termination, or within 60 days after the occurrence of any event giving rise to any other claim by [plaintiff] arising out of or relating to this Agreement. Appeal to the Policy Board within the foregoing time periods shall be a condition precedent to the right of [plaintiff] to

pursue any other remedy available under this Agreement or otherwise available under law. [Defendant], but not [plaintiff], shall be bound by the decision of the Policy Board.

(b)     If appeal to the Policy Board fails to resolve any dispute covered by this Article 10 within 180 days after it was submitted to the Policy Board, or if [plaintiff] shall be dissatisfied with the decision of the Policy Board, the dispute shall be finally settled by arbitration in accordance with the rules of the CPR Institute for Dispute Resolution (the "CPR") for Non-Administered Arbitration for Business Disputes, by a sole arbitrator, but no arbitration proceeding may consider a matter designated by this Agreement to be within the sole discretion of one party (including without limitation, a decision by such party to make an additional investment in or loan or contribution to [the dealership]), and the arbitration proceeding may not revoke or revise any provisions of this Agreement.  Arbitration shall be the sole and exclusive remedy between the parties with respect to any dispute, protest, controversy or claim arising out of or relating to this Agreement.

(c)     Arbitration shall take place in the City of Dearborn, Michigan unless otherwise agreed by the parties.  The substantive and procedural law of the State of Michigan shall apply to the proceedings. Equitable remedies shall be available in any arbitration.  Punitive damages shall not be awarded. This Section 10.01(c) is subject to the Federal Arbitration Act, 9 U.S.C.A. § 1 *et seq.*, and any judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof.

(d)     Any arbitration decision or award shall be final and binding on all parties and shall deal with the question of costs of arbitration, including

without limitation, legal fees, which shall be borne
by the losing party to the arbitration proceeding, and
all matters related thereto.

(Portion of original in bold.)

On 17 April 2009, defendant sent a letter ("Dollar Buyout Offer") to plaintiff in which it offered to "waive the repayment of the outstanding balance of preferred stock and note associated with" the Dealer Development Agreement in exchange for one dollar, provided plaintiff satisfied all of the offer's conditions by 30 September 2009. Plaintiff attempted to satisfy all of the conditions necessary to effectuate his acceptance, but the parties dispute whether plaintiff was successful.

On 10 April 2014, plaintiff sued defendant for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, as well as Ford Motor Credit Company, LLC ("FMCC") and Kathleen Burns, an employee of FMCC, for related claims. Plaintiff alleged that one of the conditions of the Dollar Buyout Offer was that he obtain a standby letter of credit for $300,000 and that he successfully obtained such a letter from Branch Banking & Trust Company ("BB&T"). Plaintiff also alleged that he satisfied all of the offer's conditions but that defendant later changed the offer's conditions to require that his standby letter of credit "be converted to cash[.]" Plaintiff further alleged that he spoke with Burns about this new condition, that she agreed to contact BB&T, but that she never in fact contacted BB&T, which prevented plaintiff from satisfying the new condition by the offer's

deadline.  Plaintiff alleged that as a result, he was "immediately terminated" and "lost his home to foreclosure."

On 19 May 2014, defendant answered and moved to compel arbitration and dismiss plaintiff's claims against it.  After holding a hearing on 22 July 2014, the trial court denied the motion on 20 August 2014.  On 4 September 2014, defendant gave timely notice of appeal.

## II.  Appellate Jurisdiction

Although the trial court's order is interlocutory, defendant contends that the order is immediately appealable because it affects a substantial right.  "[T]he right to arbitrate a claim is a substantial right which may be lost if review is delayed, and an order denying arbitration is therefore immediately appealable."  *Hobbs Staffing Servs., Inc. v. Lumbermens Mut. Cas. Co.*, 168 N.C. App. 223, 225, 606 S.E.2d 708, 710 (2005) (brackets omitted).  Accordingly, we hold that this appeal is properly before us.

## III.  Motion to Compel Arbitration and Dismiss

Defendant contends that the trial court erred when it denied its motion to compel arbitration and dismiss.  Defendant specifically argues that the trial court erred in concluding that (1) the FAA did not apply to this dispute; (2) the parties had agreed that a court, instead of an arbitrator, would decide the arbitrability of

plaintiff's claims; and (3) plaintiff's claims were not arbitrable. Because we agree with defendant on issue (2), we do not reach issue (3).

A.     Standard of Review

"The trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, reviewable *de novo* by the appellate court." *Sloan Fin. Grp., Inc. v. Beckett*, 159 N.C. App. 470, 478, 583 S.E.2d 325, 330 (2003), *aff'd per curiam*, 358 N.C. 146, 593 S.E.2d 583 (2004). "[Q]uestions of contract interpretation are reviewed as a matter of law and the standard of review is *de novo*." *Price & Price Mech. of N.C., Inc. v. Miken Corp.*, 191 N.C. App. 177, 179, 661 S.E.2d 775, 777 (2008).

B.     Choice of Law

We preliminarily note that the trial court's order suggests that it based its conclusion that the FAA did not apply to this dispute on its previous conclusion that the parties had not agreed to arbitrate disputes arising from the Dollar Buyout Offer. But the trial court should have addressed the issue of choice of law before addressing any other legal issue. *See King v. Bryant*, 225 N.C. App. 340, 344, 737 S.E.2d 802, 806 (2013) ("[I]t is incumbent upon a trial court when considering a motion to compel arbitration to address whether the Federal Arbitration Act ('FAA') or the North Carolina Revised Uniform Arbitration Act ('NCRUAA') applies to *any* agreement to arbitrate." (emphasis added and quotation marks and brackets omitted)). It is

undisputed that the parties agreed to arbitrate disputes "arising out of or relating to" the Dealer Development Agreement. Accordingly, we must first address whether the FAA applies to the Dealer Development Agreement. *See id.* at 344, 737 S.E.2d at 806.

If the parties affirmatively chose the FAA to govern an agreement to arbitrate, then the FAA will apply to that agreement. *Id.* at 345, 737 S.E.2d at 806-07; *see also* 9 U.S.C.A. ch. 1 (2009). Here, the parties affirmatively chose the FAA to govern the Dealer Development Agreement: "This Section 10.01(c) is subject to the Federal Arbitration Act, 9 U.S.C.A. § 1 *et seq.*, and any judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof." Accordingly, we hold that the FAA applies to any dispute arising from the Dealer Development Agreement. *See King*, 225 N.C. App. at 345, 737 S.E.2d at 806-07.

C.      Arbitrability

Defendant next argues that the trial court erred in concluding that the parties had agreed that a court, instead of an arbitrator, would decide the arbitrability of plaintiff's claims.

i.      Substantive Arbitrability vs. Procedural Arbitrability

"The twin pillars of consent and intent are the touchstones of arbitrability analysis. Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Peabody Holding*

*v. United Mine Workers of America,* 665 F.3d 96, 103 (4th Cir. 2012) (quotation marks

omitted).

> Where ordinary contracts are at issue, it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide. If the contract is silent on the matter of who primarily is to decide "threshold" questions about arbitration, courts determine the parties' intent with the help of presumptions.
>
> On the one hand, courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about "arbitrability." These include questions such as "whether the parties are bound by a given arbitration clause," or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."
>
> On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. These procedural matters include claims of waiver, delay, or a like defense to arbitrability. And they include the satisfaction of prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.

*BG Group plc v. Republic of Arg.,* ___ U.S. ___, ___, 188 L. Ed. 2d 220, 228-29 (2014)

(citations and quotation marks omitted).

> Both sections 3 and 4 [of the FAA] call for an expeditious and summary hearing, with only restricted inquiry into factual issues. Hence, whether granting an order to arbitrate under section 3 or section 4, the district court must first determine if the issues in dispute meet the standards of either "substantive arbitrability" or "procedural arbitrability." A substantive arbitrability inquiry confines the district court to considering only those issues relating to the arbitrability of the issue in dispute

and the making and performance of the arbitration agreement. . . . [T]he first duty of the district court when reviewing an arbitration proceeding under section 4 of the Act is to conduct a substantive arbitrability inquiry— meaning the court engages in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement. If the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute. All other issues raised before the court not relating to these two determinations fall within the ambit of "procedural arbitrability."

. . . .

It is clear from these decisions, which represent over thirty years of Supreme Court and federal circuit court precedent that issues of "substantive arbitrability" are for the court to decide, and questions of "procedural arbitrability[]" . . . are for the arbitrator to decide.

*Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 453-54 (4th Cir. 1997) (citations, quotation marks, brackets, and footnotes omitted); *see also* 9 U.S.C.A. §§ 3, 4.

Here, defendant argues that the trial court erred in concluding that plaintiff's claims did not fall within the scope of the arbitration clause of the Dealer Development Agreement. This issue is a question of substantive arbitrability. *Glass*, 114 F.3d at 453; *BG Group*, ___ U.S. at ___, 188 L. Ed. 2d at 228. Therefore, as an initial matter, we presume that the parties intended that the trial court decide this issue of substantive arbitrability. *Glass*, 114 F.3d at 454; *BG Group*, ___ U.S. at ___, 188 L. Ed. 2d at 228.

ii.     Clear and Unmistakable Intent

A party can overcome this presumption if it shows that the parties "clearly and unmistakably" intended for an arbitrator, instead of a court, to decide issues of substantive arbitrability. *See AT&T Technologies v. Communications Workers*, 475 U.S. 643, 649, 89 L. Ed. 2d 648, 656 (1986); *Peabody Holding*, 665 F.3d at 102.

> Those who wish to let an arbitrator decide which issues are arbitrable need only state that "all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration," or words to that clear effect. Absent such clarity, we are compelled to find that disputes over the arbitrability of claims are for judicial resolution.

*Carson v. Giant Food, Inc.*, 175 F.3d 325, 330-31 (4th Cir. 1999).

At least eight federal appellate courts have held that the parties' express adoption of an arbitral body's rules in their agreement, which delegate questions of substantive arbitrability to the arbitrator, presents clear and unmistakable evidence that the parties intended to arbitrate questions of substantive arbitrability. *See Petrofac, Inc. v. DynMcDermott Petroleum*, 687 F.3d 671, 675 (5th Cir. 2012) (holding that the parties' express adoption of the American Arbitration Association rules in their agreement constituted clear and unmistakable evidence); *Fallo v. High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009) (same); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (same); *Terminix Intern. v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332-33 (11th Cir. 2005) (same); *Contec Corp. v. Remote*

*Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (same); *Chevron Corp. v. Ecuador*, 795 F.3d 200, 207-08 (D.C. Cir. 2015) (same result under the United Nations Commission on International Trade Law rules); *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074-75 (9th Cir. 2013) (same); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473-74 (1st Cir. 1989) (same result under International Chamber of Commerce rules).

We note that three federal appellate courts have held that the parties had not delegated issues of substantive arbitrability to the arbitrator despite their express adoption of an arbitral body's rules in their agreement. *See Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 225-26, 229-30 (3rd Cir. 2012); *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 490 (7th Cir. 2004); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 777 n.1, 780-81 (10th Cir. 1998). But in each of these cases, the court did not specifically address whether the parties' express adoption of these rules constituted clear and unmistakable evidence that they intended to arbitrate questions of substantive arbitrability, nor did the court examine the rules to determine if they delegated questions of substantive arbitrability to the arbitrator. *Quilloin*, 673 F.3d at 229-30; *Oblix*, 374 F.3d at 490; *Riley*, 157 F.3d at 780-81. Accordingly, we hold that *Quilloin*, *Oblix*, and *Riley* are inapposite.

Plaintiff argues that while the Fourth Circuit Court of Appeals "has not ruled explicitly" on this issue, two cases from that Court suggest that parties' express

adoption of an arbitral body's rules does not constitute "clear and unmistakable" evidence that the parties intended to arbitrate questions of substantive arbitrability. *See Cathcart Properties, Inc. v. Terradon Corp.*, 364 F. App'x 17, 18 (4th Cir. Feb. 4, 2010) (*per curiam*) (unpublished); *Central West Virginia Energy v. Bayer Cropscience*, 645 F.3d 267, 273-74 (4th Cir. 2011). But neither case stands for this proposition or even addresses this issue.

In *Cathcart Properties*, the Fourth Circuit held that the parties did not "clearly and unmistakably" agree to arbitrate questions of substantive arbitrability, "[b]ecause there was no contract provision that expressly stated that the parties agreed to arbitrate the arbitrability of a claim[.]" *Cathcart Properties*, 364 F. App'x at 18. The Court did not address or even mention the issue of whether parties can delegate questions of substantive arbitrability to the arbitrator by expressly adopting an arbitral body's rules. Plaintiff points out that in the relevant arbitration provision, the parties identified the arbitral body that would decide any arbitration claims: "[T]he parties agree that any dispute or controversy arising from this Contract which would otherwise require or allow resort to any court or other governmental dispute resolution forum, shall be submitted for determination by binding arbitration under the Construction Industry Dispute Resolution of the America[n] Arbitration Association." *Cathcart Properties, Inc. v. Terradon Corp.*, Civil Action No. 3:08-0298, slip op. at 2 (S.D. W. Va. Feb. 6, 2009) (unpublished), *aff'd per curiam*, 364 F. App'x

17 (4th Cir. Feb. 4, 2010) (unpublished). But the parties did not expressly adopt the *rules* of an arbitral body; rather, they merely identified the arbitral body. Accordingly, we distinguish *Cathcart Properties*. We also note that as an unpublished opinion, *Cathcart Properties* is not binding precedent in the Fourth Circuit. *Cathcart Properties*, 364 F. App'x at 18.

Plaintiff next points out that in *Central West Virginia Energy*, the Fourth Circuit held that the parties' dispute was "not a matter of arbitrability that necessitates resolution by a court" and that "delineating an issue as either one of arbitrability or one of procedure serves the goal of preserving the former for judicial resolution." *Central West Virginia Energy*, 645 F.3d at 273-74. But the Court also qualified this distinction in accordance with U.S. Supreme Court precedent and quoted *Howsam v. Dean Witter Reynolds, Inc.*: "[T]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination *unless* the parties clearly and unmistakably provide otherwise." *Id.* at 273 (emphasis added and brackets omitted) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 154 L. Ed. 2d 491, 497 (2002)).

As the Fourth Circuit has not yet addressed the issue of whether parties' express adoption of an arbitral body's rules, which delegate questions of substantive arbitrability to the arbitrator, constitutes "clear and unmistakable" evidence that the

parties intended to arbitrate questions of substantive arbitrability, we will follow the majority rule.

We recognize that this Court has held that the parties' adoption of an arbitral body's rules was clear and unmistakable evidence that the parties intended for an arbitrator to decide a question of *procedural* arbitrability. *See Smith Barney, Inc. v. Bardolph*, 131 N.C. App. 810, 817, 509 S.E.2d 255, 259-60 (1998). There, the defendant argued that an arbitrator should decide the question of whether his claims were barred as untimely under the National Association of Securities Dealers ("NASD") arbitration rules. *Id.* at 813, 509 S.E.2d at 257. This Court held: "The parties' adoption of [the NASD rules] is a 'clear and unmistakable' expression of their intent to leave the question of arbitrability to the arbitrators. In no uncertain terms, Section 10324 [of the NASD rules] commits interpretation of all provisions of the NASD Code to the arbitrators." *Id.* at 817, 509 S.E.2d at 259 (brackets omitted). Following the majority rule among the federal appellate courts, we extend this holding to the context of substantive arbitrability.

In article 10.01(b) of the Dealer Development Agreement, the parties expressly adopted the CPR Institute for Dispute Resolution ("CPR") rules:

> If appeal to the Policy Board fails to resolve any dispute covered by this Article 10 within 180 days after it was submitted to the Policy Board, or if [plaintiff] shall be dissatisfied with the decision of the Policy Board, the dispute shall be finally settled by arbitration *in accordance with the rules of the CPR Institute for Dispute Resolution*

*(the "CPR") for Non-Administered Arbitration for Business Disputes*, by a sole arbitrator, but no arbitration proceeding may consider a matter designated by this Agreement to be within the sole discretion of one party (including without limitation, a decision by such party to make an additional investment in or loan or contribution to [the dealership]), and the arbitration proceeding may not revoke or revise any provisions of this Agreement. Arbitration shall be the sole and exclusive remedy between the parties with respect to any dispute, protest, controversy or claim arising out of or relating to this Agreement.

(Emphasis added.) Rule 8.1 of the CPR rules provides: "The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, *scope* or validity of the arbitration agreement." (Emphasis added.) Given the parties' adoption of the CPR rules, which includes CPR Rule 8.1., we hold that the parties clearly and unmistakably intended that an arbitrator would decide questions of substantive arbitrability, like the one at issue here. *See Petrofac*, 687 F.3d at 675; *Fallo*, 559 F.3d at 878; *Qualcomm*, 466 F.3d at 1373.

iii.    "Wholly Groundless" Exception

Plaintiff responds that even if the parties intended to arbitrate issues of substantive arbitrability, the trial court did not err in denying defendant's motion to compel arbitration because defendant's motion was "wholly groundless." If a party's claim of arbitrability is "wholly groundless," the trial court must deny the party's motion to compel arbitration even if the parties have agreed that an arbitrator should

decide questions of substantive arbitrability. *See Local No. 358, Bakery & Confec., etc. v. Nolde Bros.*, 530 F.2d 548, 553 (4th Cir. 1975) ("[T]he arbitrability of a dispute may itself be subject to arbitration if the parties have clearly so provided in the agreement. Of course, the court must decide the threshold question whether the parties have in fact conferred this power on the arbitrator. If they have, the court should stay proceedings pending the arbitrator's determination of his own jurisdiction, *unless it is clear that the claim of arbitrability is wholly groundless*.") (emphasis added), *aff'd*, 430 U.S. 243, 51 L. Ed. 2d 300 (1977). The purpose of this inquiry is to "prevent[] a party from asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration." *Qualcomm*, 466 F.3d at 1373 n.5.

> Because the wholly groundless inquiry is supposed to be limited, a court performing the inquiry may simply conclude that there is a legitimate argument that the arbitration clause covers the present dispute, and, on the other hand, that it does not[,] and, on that basis, leave the resolution of those plausible arguments for the arbitrator. Nevertheless, the wholly groundless inquiry necessarily requires the courts to examine and, to a limited extent, construe the underlying agreement.

*Douglas v. Regions Bank*, 757 F.3d 460, 463 (5th Cir. 2014) (quotation marks, brackets, and ellipsis omitted).

Here, the scope of the parties' arbitration agreement is broad and covers "any dispute, protest, controversy or claim arising out of or relating to" the Dealer

Development Agreement. *See American Recovery v. Computerized Thermal Imaging*, 96 F.3d 88, 93 (4th Cir. 1996) (holding that substantively identical language in an arbitration provision was "capable of an expansive reach" and "embraced every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute" (brackets omitted)). All of plaintiff's claims against defendant arise from his allegation that after he satisfied all of the conditions necessary to effectuate his acceptance of the Dollar Buyout Offer, defendant unilaterally changed one of the offer's conditions, which plaintiff then was unable to satisfy. Under the Dollar Buyout Offer, defendant offered to "waive the repayment of the outstanding balance of preferred stock and note associated with" the Dealer Development Agreement in exchange for one dollar, provided plaintiff satisfied all of the offer's conditions. Given the broad scope of the parties' arbitration clause in the Dealer Development Agreement and the fact that the Dollar Buyout Offer directly relates to the Dealer Development Agreement, we hold that it is plausible that plaintiff's claims are arbitrable and thus defendant's motion to compel arbitration is not "wholly groundless." *See Douglas*, 757 F.3d at 463. Accordingly, we hold that the trial court erred in concluding that the parties had agreed that a court, instead of an arbitrator, would decide the arbitrability of plaintiff's claims.

## IV. Conclusion

For the foregoing reasons, we reverse the trial court's order denying defendant's motion to compel arbitration and dismiss.

REVERSED.

Judges McCULLOUGH and INMAN concur.