AP Atl., Inc. v. Crescent Univ. City Venture, LLC, 2016 NCBC 58.

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 15 CVS 14745 |

AP ATLANTIC, INC. d/b/a ADOLFSON
& PETERSON CONSTRUCTION,

          Plaintiff and Third-
          Party Plaintiff,

v.

CRESCENT UNIVERSITY CITY
VENTURE, LLC AND THE
GUARANTEE COMPANY OF NORTH
AMERICA USA, BB & M
ARCHITECTURE, PLLC, SCA
ENGINEERS, INC., MADISON
CONSTRUCTION GROUP, INC.,
TRUSSWAY MANUFACTURING, INC.,
and T. A. KAISER HEATING & AIR,
INC.,

          Defendants,

v.

COMMERCIAL GLAZING
ASSOCIATES, LLC, KMAC OF THE
CAROLINAS, INC., SEARS
CONTRACT, INC., and SOUTHEND
PAINTING CONTRACTORS, INC.,

          Third-Party Defendants.

MADISON CONSTRUCTION GROUP,
INC.,

          Third-Party Plaintiff,

v.

MANUEL BUILDING CONTRACTORS,
LLC,

          Third-Party Defendant.

**ORDER AND OPINION ON THIRD-PARTY
DEFENDANT SEARS CONTRACT, INC.'S
MOTION TO DISMISS OR STAY AND
COMPEL ARBITRATION**

{1}    **THIS MATTER** is before the Court upon Third-Party Defendant Sears Contract, Inc.'s ("Sears") Motion to Dismiss or Stay Litigation and Compel Arbitration (the "Motion") in the above-captioned case.[1]

{2}    After considering the Motion, the briefs in support of and in opposition to the Motion, and the arguments of counsel at a hearing on July 27, 2016, the Court memorializes its oral ruling at the hearing and hereby **DENIES** the Motion and **DEFERS** to the duly-selected arbitrator in the private arbitration currently pending between the parties the determination of the arbitrability of Plaintiff AP Atlantic, Inc. d/b/a Adolfson & Peterson Construction's ("Plaintiff" or "AP Atlantic") claim for breach of contract against Sears for alleged late performance.

> *Johnston, Allison, & Hord, P.A., by Greg C. Ahlum, Robert L. Burchette, and Parker E. Moore, for Plaintiff AP Atlantic, Inc. d/b/a/ Adolfson & Peterson Construction.*
>
> *Hamilton, Stephens, Steele, & Martin, PLLC, by Bentford E. Martin and Mark R. Kutny, for Third-Party Defendant Sears Contract, Inc.*

Bledsoe, Judge.

## I.
## BACKGROUND

{3}    This case arises out of multi-party litigation regarding a construction project for which Plaintiff AP Atlantic was the general contractor and Sears was a subcontractor tasked with furnishing and installing drywall.  AP Atlantic's Third-Party Complaint brings a claim against Sears for breach of contract for Sears's alleged delay in performance (the "Delay Claim") and for alleged damage to trusses caused by Sears.  Sears's Motion petitions the Court to (i) dismiss AP Atlantic's Delay Claim under the prior pending action doctrine or, alternatively, (ii) stay AP Atlantic's Delay Claim and compel arbitration of the Delay Claim in an arbitration previously scheduled between AP Atlantic and Sears.  Ruling on the merits of the Motion would

---

[1] Sears purports to bring the Motion under the authority of Rules 12(b) and 13(a) of the North Carolina Rules of Civil Procedure, the North Carolina Revised Uniform Arbitration Act, N.C. Gen. Stat. §1-569.1 *et seq.* (the "North Carolina Act"), and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA").  Because this Motion is brought under Rule 12, the Court must issue this Order and Opinion in the form of a written opinion.  *See* N.C. Gen. Stat. § 7A-45.3.

require the Court to determine whether or not AP Atlantic's Delay Claim is subject to an arbitration agreement entered into between AP Atlantic and Sears in a prior pending action.

{4}    The North Carolina appellate courts have made it clear that "an order denying a motion to compel arbitration must include findings of fact as to 'whether the parties had a valid agreement to arbitrate' and, if so, 'whether the specific dispute falls within the substantive scope of that agreement.'" *Cornelius v. Lipscomb*, 224 N.C. App. 14, 16, 734 S.E.2d 870, 871 (2012) (citations omitted); *see also, e.g., Cold Springs Ventures, LLC v. Gilead Scis., Inc.*, 2015 NCBC LEXIS 1, at *6 (N.C. Super. Ct. Jan. 6, 2015) (noting that N.C. Gen. Stat. § 1-569.7 and relevant case law require the trial court "to make finding[s of] fact[] in order to determine whether an 'enforceable agreement to arbitrate' exists"). At the same time, our courts have held that "an order compelling arbitration does not affect a substantial right" that will be lost absent an immediate appeal. *Haynesworth v. Am. Express Travel Related Servs. Co.*, No. COA12-472, 2013 N.C. App. LEXIS 315, at *5 (N.C. Ct. App. Apr. 2, 2013) (unpublished) (citing *Bullard v. Tall House Bldg. Co.*, 196 N.C. App. 627, 635–36, 676 S.E.2d 96, 102 (2009) ("[A]n order granting a motion to compel arbitration . . . is explicitly recognized not to have a right of appeal within our case law.")).

{5}    The Court elects to make the following findings of fact and conclusions of law for the limited purpose of resolving the Motion's request to stay litigation and compel arbitration.[2]    *See, e.g., Creekside Constr. Co. v. Dowler*, 172 N.C. App. 558, 563, 616 S.E.2d 609, 612 (2005) (affirming order compelling arbitration where trial court made findings of fact and conclusions of law). Although most of the alleged facts do not appear to be in dispute, "in determining the threshold issue of whether a mandatory arbitration agreement exists, the court necessarily must sit as a finder of fact. Accordingly, for such limited purpose, the court also may consider evidence as

---

[2] Although the Court is not required to make findings of fact on a motion to dismiss, and neither party has requested findings here, the Court, in its discretion, adopts the following findings of fact and conclusions of law with regard to the Motion's requested relief of dismissal and compelling arbitration. *See Watkins v. Hellings*, 321 N.C. 78, 82, 361 S.E.2d 568, 571 (1987).

to facts that are in dispute." *Capps v. Blondeau*, 2010 NCBC LEXIS 10, at *5 n.6 (N.C. Super. Ct. Apr. 13, 2010) (citing *Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004)), *aff'd*, 217 N.C. App. 195, 719 S.E.2d 256 (2011). The Court makes these findings without prejudice to inconsistent findings in any subsequent proceeding. The findings are based on the Amended Third-Party Complaint against Sears, the Motion, and documents of record.[3]

II.

FINDINGS OF FACT

{6}     Plaintiff AP Atlantic was the general contractor for the construction of the Circle University City Apartments (the "Project") in Charlotte, North Carolina under a prime construction contract with Crescent University City Venture, LLC ("Crescent" or the "Owner") dated December 14, 2012 (the "Prime Contract").

{7}     On December 14, 2012, AP Atlantic also entered into a subcontract agreement with Sears to furnish and install drywall on the Project (the "Subcontract"). The Subcontract contains separate provisions concerning the procedures for the resolution of claims between AP Atlantic and Sears that involve the Owner (Section 12.2) and for resolution of claims between the parties that do not involve the Owner (Section 12.3). (Am. Third-Party Compl. Against Sears ¶¶ 11–13.) AP Atlantic contends that Section 12.2 requires claims involving the Owner, including the Delay Claim advanced in this action, to be pursued in litigation in a court of competent jurisdiction. By its terms, Section 12.3 provides that disputes not involving the Owner "shall be resolved by mediation, then arbitration."

{8}     Sears completed its work under the Subcontract in early 2015 but was not promptly or fully paid by AP Atlantic.

---

[3] Sears submitted to the Court at the hearing a letter dated July 26, 2016 from AP Atlantic's counsel in the Arbitration to the Arbitrator seeking to withdraw AP Atlantic's claim for delay damages against Sears in the Arbitration. The Court notes that it is AP Atlantic's Delay Claim in the above-captioned action, not AP Atlantic's claims in the Arbitration, which is relevant to the Court's decision on the Motion. Thus, the Court does not rely on the July 26 letter in this Order and Opinion.

{9} In May 2015, Sears filed a Notice of Claim of Lien Upon Funds on Crescent and AP Atlantic and filed a Subrogation Claim of Lien on Real Property with the Mecklenburg County Clerk of Superior Court.

{10} On July 7, 2015, Sears filed Civil Action 15-CVS-12696 (the "Prior Action") in Mecklenburg County Superior Court against AP Atlantic and Crescent to enforce its lien claims and also to bring a breach of contract claim against AP Atlantic.

{11} Subsequently, Western Surety Company ("Western Surety") discharged Sears's lien claims via a lien discharge bond and was substituted as a Defendant in lieu of Crescent in the Prior Action.

{12} On December 8, 2015, the Mecklenburg County Superior Court entered a Consent Order Staying Litigation Pending Arbitration in the Prior Action (the "Consent Order"). The Court attached to the Consent Order an Arbitration Agreement executed by counsel for AP Atlantic and Sears on behalf of each party in late November 2015 and ordered that the parties "shall arbitrate the matters in dispute between them as provided in the Arbitration Agreement." (Sears Mot. Dismiss or Compel Arbitration Ex. D. ¶ 3.) The Consent Order required the parties to commence arbitration "so as to allow completion as soon as reasonably possible but not later than August 31, 2016" and to select an arbitrator "within thirty days (30) of the date of the [Consent] Order." (Sears Mot. Dismiss or Compel Arbitration Ex. D. ¶¶ 3–4.)

{13} The Arbitration Agreement provided in paragraph 6 that "the Parties agree to submit all claims, defenses, counterclaims, and replies that have been pled or could have been pled, at issue between them in the [Prior Action] to binding Arbitration in accordance with this Agreement and the dispute resolution terms of the Subcontract." (Sears Mot. Dismiss or Compel Arbitration Ex. A ¶ 6.)

{14} The Arbitration Agreement further provided in paragraph 9 that "[t]he Arbitration will be privately-administered by the Parties and the Arbitrator and conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, effective July 1, 2015 (the "Construction Industry Rules")." (Sears Mot. Dismiss or Compel Arbitration Ex. A ¶ 9.)

{15} The Arbitration Agreement also provided in paragraph 12 that "[t]he Arbitration shall be pursuant to, and under the auspices of, the [North Carolina Act], but governed by the Construction Industry Rules." (Sears Mot. Dismiss or Compel Arbitration Ex. A ¶ 12.)

{16} Finally, the Arbitration Agreement provided in paragraph 19 that "[t]he Arbitrator shall interpret and apply the provisions of this Arbitration Agreement." (Sears Mot. Dismiss or Compel Arbitration Ex. A ¶ 19.)

{17} Sears initiated a private arbitration against AP Atlantic and Western Surety shortly after entry of the Consent Order (the "Arbitration"), and AP Atlantic and Western Surety filed an Answering Statement and Reservation of Counterclaims and Defenses in the Arbitration on December 28, 2015.

{18} The parties have advised the Court that the Arbitration is currently scheduled to commence before the duly-selected Arbitrator, William A. Blancato, Esq., on August 15, 2016.

{19} On August 5, 2015, AP Atlantic filed the current action initially against Crescent and the Guarantee Company of North America claiming breach of contract against Crescent and seeking to enforce three claims of lien filed by AP Atlantic against Crescent and the Project (the "Current Action").

{20} On January 29, 2016, Crescent filed an Answer and Counterclaims against AP Atlantic in the Current Action, including claims for breach of contract against AP Atlantic relating to AP Atlantic's alleged delayed or late completion of the Project.

{21} On April 29, 2016, AP Atlantic filed a Third-Party Complaint against Sears asserting the Delay Claim, which seeks damages for breach of contract based on Sears's alleged delay in completing the Subcontract.

{22} AP Atlantic subsequently amended its Third-Party Complaint against Sears on June 22, 2016 to assert additional third-party claims against Sears relating to alleged truss failures.

{23} Sears has not sought to dismiss or compel to arbitration AP Atlantic's truss-related claims. (Sears Br. Supp. Mot. Dismiss or Compel Arbitration 2 n.1.) The only

claim Sears seeks to dismiss or compel to arbitration in the Motion is AP Atlantic's Delay Claim against Sears for alleged late performance under the Subcontract.

{24} Sears filed its current Motion on July 15, 2016. The Court ordered expedited briefing on the Motion on account of the upcoming arbitration, and the Court held a hearing on the Motion on July 27, 2016. The Motion is now ripe for resolution.

III.

CONCLUSIONS OF LAW

A. Applicable Law.

{25} Our appellate courts have instructed that when asked to interpret an arbitration provision, "the trial court should . . . address[] the issue of choice of law before addressing any other legal issue." *Bailey v. Ford Motor Co.*, 780 S.E.2d 920, 924 (N.C. Ct. App. 2015). More specifically, "it is incumbent upon a trial court when considering a motion to compel arbitration to address whether the [FAA] or the [North Carolina Act] applies to any agreement to arbitrate." *King v. Bryant*, 225 N.C. App. 340, 344, 737 S.E.2d 802, 806 (2013) (internal quotation marks and citation omitted).

{26} Here, the parties agreed in paragraph 12 of the Arbitration Agreement that the arbitration "shall be pursuant to, and under the auspices of the [North Carolina Act]." The Consent Order also provided that the "parties shall arbitrate the matters in dispute among them as provided in the Arbitration Agreement" and that "the Court retain[ed] jurisdiction in this cause for further proceedings in accordance with the [North Carolina Act]." Therefore, it appears that the parties and the Mecklenburg County Superior Court entering the Consent Order in the Prior Action intended that the North Carolina Act should apply to the application and interpretation of the Arbitration Agreement. *See, e.g., Epic Games, Inc. v. Murphy*, 785 S.E.2d 137, 143 (N.C. Ct. App. 2016) (noting that the North Carolina Act "dictate[s] that arbitration is strictly a matter of contract").

{27} Nevertheless, the North Carolina Supreme Court has held that where the FAA applies to a particular contract, the FAA supersedes conflicting state law even if the contract has a choice of law provision. *Burke Co. Pub. Schs. Bd. of Ed. v. Shaver*

*P'ship*, 303 N.C. 408, 424, 279 S.E.2d 816, 825 (1981) ("the choice of law provision in the contract does not preclude application of the [FAA]"); *see also Carpenter v. Brooks*, 139 N.C. App. 745, 750, 534 S.E.2d 641, 645 (2000) (applying holding). The FAA applies to any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (2012). The United States Supreme Court has observed in this context that "the word 'involving' is broad, and is indeed the functional equivalent of 'affecting.'" *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995). "[T]he word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full." *Id.* at 277. Moreover, the words "a contract evidencing a transaction involving commerce" require only that the transaction involve interstate commerce. *Id.* at 278–81. It is not required, for the FAA to apply, that the parties to the transaction "contemplate" an interstate commerce connection. *Id.* at 281.

{28} Nonetheless, "even when the FAA governs a dispute, state law fills procedural gaps in the FAA as it is applied in state courts," *Cold Springs Ventures, LLC v. Gilead Scis., Inc.*, 2014 NCBC LEXIS 10, at *8 (N.C. Super. Ct. Mar. 26, 2014), including where claims might otherwise be governed by sections 3 and 4 of the FAA, *see Southland Corp v. Keating*, 465 U.S. 1, 16 n.10 (1984) ("[W]e do not hold that §§ 3 and 4 of the [FAA] apply to proceedings in state courts."). *See generally Gaylor, Inc. v. Vizor, LLC*, 2015 NCBC LEXIS 102, at *10–11 (N.C. Super. Ct. Oct. 30, 2015) (discussing the FAA and the North Carolina Act).

{29} The parties here dispute whether the Arbitration Agreement evidences a transaction involving interstate commerce, and the record before the Court on this issue is sparse. The Court concludes, however, that, in the specific circumstances here, it is unnecessary to resolve whether the FAA or the North Carolina Act applies because, under either statute, the Court concludes, for the reasons set forth below, that the arbitrability of AP Atlantic's Delay Claim against Sears should be determined by the Arbitrator in the Arbitration. *See Epic Games*, 785 S.E.2d at 142 (declining to determine whether the FAA or the North Carolina Act applied because "[u]nder either law, the plain language of the arbitration clause, properly interpreted,

delegates the threshold issue of substantive arbitrability to the arbitrator – not to the trial court").

B. Arbitrability.

{30} To decide whether an action should be dismissed or abated under the prior pending action doctrine, as urged by Sears, "[t]he ordinary test . . . is this: Do the two actions present a substantial identity as to parties, subject matter, issues involved, and relief demanded?" *Jessee v. Jessee*, 212 N.C. App. 426, 438, 713 S.E.2d 28, 37 (2011). Thus, to determine whether the Delay Claim should be dismissed under the prior pending action doctrine, the Court would necessarily be required to decide whether the Delay Claim is essentially the same claim that AP Atlantic and Sears have agreed to arbitrate under the Arbitration Agreement in the Prior Action. The Court therefore concludes that Sears's Motion, both as a Motion to Dismiss, and in its alternative form as a Motion to Stay and Compel Arbitration, seeks the Court's determination of the arbitrability of AP Atlantic's Delay Claim against Sears.

{31} "[Q]uestions such as 'whether the parties are bound by a given arbitration clause,' or [as here] 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy'" are issues of "substantive arbitrability." *Bailey*, 780 S.E.2d at 925 (quoting *BG Group PLC v. Republic of Arg.*, 134 S.Ct. 1198, 1206 (2014)). The Court thus concludes that the arbitrability of AP Atlantic's Delay Claim against Sears for alleged late performance under the Subcontract is an issue of substantive arbitrability.

{32} Typically, "issues of 'substantive arbitrability' are for the court to decide, and questions of 'procedural arbitrability' are for the arbitrator to decide." *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 453–54 (4th Cir. 1997) (citations omitted) (applying FAA). Under the FAA, "a party can overcome this presumption if it shows that the parties 'clearly and unmistakably' intended for the arbitrator, instead of a court, to decide issues of substantive arbitrability." *Bailey*, 780 S.E.2d at 925 (citing *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). The North Carolina Court of Appeals has observed, however, that the standard under the North Carolina Act to overcome the presumption is less exacting. *See Epic Games*, 785

S.E.2d at 16 (observing that the FAA standard of "clear and unmistakable evidence" is "a more exacting standard than currently exists when interpreting arbitration clauses subject to the [North Carolina Act]").

{33} Under paragraph 19 of the Arbitration Agreement, the parties agreed that the "[t]he Arbitrator shall interpret and apply the provisions of this Arbitration Agreement," thus suggesting that the parties voluntarily chose to delegate the decision regarding the arbitrability of claims and the scope of the arbitration to the Arbitrator. While such language may be sufficient to overcome the presumption under the North Carolina Act, *see Epic Games*, 785 S.E.2d at 143 (concluding similar language indicated that the parties sought to delegate issues of substantive arbitrability to the arbitrator), federal Fourth Circuit decisions suggest otherwise under the FAA, *see, e.g.*, *Carson v. Giant Food, Inc.*, 175 F.3d 325, 330 (4th Cir. 1999) (holding that "clauses requiring arbitration to resolve disputes 'regarding the terms of this Agreement' [or] concerning the interpretation of this Agreement . . . do not clearly and unmistakably commit questions of arbitrability to arbitration").

{34} Nevertheless, the parties also expressly agreed in paragraph 12 of the Arbitration Agreement that the Arbitration would be "governed by the Construction Industry Rules." Rule 9(a) of the Construction Industry Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA, Construction Industry Arbitration Rules and Mediation Procedures, Rule 9(a) (July 1, 2015). This Court has previously concluded that the arbitrability of claims under an arbitration agreement that incorporated the Construction Industry Rules is properly for the arbitrator, even under the FAA's more rigorous standard. *See Gaylor,* 2015 NCBC LEXIS 102, at *17–18 ("Rule 9(a) 'clearly and unmistakably' submits the issue of the arbitrability of the [claim] to the arbitrator").

{35} The North Carolina Court of Appeals has also recently ruled that an identical provision in the AAA Employment Rules demonstrates, without more, that by incorporating the Employment Rules, "the parties agreed the arbitrator should

decide issues of substantive arbitrability." *Epic Games*, 785 S.E.2d at 144. Similarly, the Court of Appeals has concluded under the FAA that, by adopting the rules of the CPR Institute for Dispute Resolution, a nearly identical provision in those rules established that "the parties clearly and unmistakably intended that an arbitrator would decide questions of substantive arbitrability." *Bailey*, 780 S.E.2d at 927.

{36} Moreover, numerous federal courts have reached the same conclusion under the FAA in similar circumstances. *Id.* at 925–26 (discussing cases); *see also, e.g.*, *United States ex rel. Beauchamp & Shephard v. Academi Training Ctr.*, No. 1:11cv371, 2013 U.S. Dist. LEXIS 46433, at *15–16 (E.D. Va. Mar. 29, 2013) (listing cases and finding Rule 7 of the AAA Commercial Rules, which is identical to Rule 9 of the Construction Industry Rules, "'clearly and unmistakably' delegates to the arbitrator the question of arbitrability and thus, the [arbitration agreement], by referencing the AAA Commercial Rules, 'clearly and unmistakably' does the same"); *Terra Holding GmbH v. Unitrans Int'l, Inc.*, No. 1:14-cv-1788, 2015 U.S. Dist. LEXIS 112570, at *7–8 (E.D. Va. Aug. 19, 2015) ("Although the Fourth Circuit has not yet said so, it appears from well-reasoned opinions in other circuits that the 'clear and unmistakable' standard is met when, in addition to the expansive language, an arbitration clause incorporates a specific set of rules that authorize arbitrators to determine arbitrability.").

{37} Accordingly, the Court concludes that our North Carolina appellate courts and the greater weight of authority from the federal courts, under either the FAA or the North Carolina Act, have determined that "the parties' express adoption of an arbitral body's rules, which delegate questions of substantive arbitrability to the arbitrator, constitutes 'clear and unmistakable' evidence that the parties intended to arbitrate questions of substantive arbitrability." *Bailey*, 780 S.E.2d at 927 (discussing FAA); *see, e.g.*, *Epic Games*, 785 S.E.2d at 144 (applying rule under FAA and North Carolina Act).

{38} The Court does not discern a meaningful difference in this context between an arbitration agreement that "incorporates" or "adopts" the Construction Industry Rules and one which, as here, is "governed by" those Rules. As a result, the Court

concludes that, under the express terms of the Arbitration Agreement, the parties delegated in clear and unmistakable terms the threshold issue of substantive arbitrability to the Arbitrator in the Arbitration.

{39} Accordingly, the Court concludes that the core issue raised in the Motion – whether the parties agreed to arbitrate AP Atlantic's Delay Claim against Sears – is an issue of substantive arbitrability that, under either the FAA or the North Carolina Act, must be determined by the Arbitrator in the Arbitration.

IV.

CONCLUSION

{40} **WHEREFORE**, based on the foregoing, the Court **ORDERS** that:

A. The determination of the arbitrability of AP Atlantic's breach of contract claim based on Sears's alleged delay in completing the Subcontract is **DEFERRED** to the Arbitrator in the Arbitration, and litigation of AP Atlantic's Delay Claim against Sears in the Current Action is **STAYED** pending the Arbitrator's determination.

B. The Motion is hereby **DENIED**.

C. The parties shall notify the Court of the Arbitrator's decision concerning the arbitrability of the Delay Claim within seven days after such decision has been announced.

**SO ORDERED**, this the 28th day of July, 2016.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases