Hall v. Dancy, 2018 NCBC 61.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

J. CAMPBELL HALL, III, individually
and as Trustee of the J. Campbell Hall,
III Revocable Trust,

        Plaintiff,

    v.

BRIAN E. DANCY,

        Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 4747

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS
OR TO STAY AND COMPEL
ARBITRATION**

1.    THIS MATTER is before the Court on Defendant's Motion to Dismiss or to Stay and Compel Arbitration ("Motion"). For the reasons discussed below, the Motion is GRANTED to the extent it seeks a demand for arbitration, but the issue of arbitrability is referred to the arbitrator.

> *Tuggle Duggins, P.A., by Denis E. Jacobson, Brandy L. Mansouraty, and Spencer C. Krantz, for Plaintiff.*

> *Rossabi Reardon Klein Spivey PLLC, by Amiel J. Rossabi, for Defendant.*

Gale, Chief Judge.

2.    In 2000, Plaintiff J. Campbell Hall, III ("Hall") and Defendant Brian E. Dancy ("Dancy") established Powder Works of High Point, Inc. ("Powder Works"), a corporation that provides powder-coating services to industrial companies. (Compl. ¶¶ 8–11, ECF No. 3.)[1] Both Hall and Dancy are officers and directors of Powder

---

[1] Dancy has not yet answered the Complaint. Except where noted, the Court believes that the provisions of the Complaint cited in this Order and Opinion are not contested, and the parties have stipulated that they executed the agreement containing the arbitration provision on which Dancy relies in seeking to compel arbitration.

Works; Hall serves as the President, and Dancy serves as the Vice President and Secretary. (Compl. ¶¶ 9–10.)

3.     Hall and Dancy executed the Powder Works, Inc. Shareholders Agreement ("Shareholders Agreement"), dated October 26, 2000. (*See* Compl. Ex. E ("Shareholders Agreement").) Among other provisions, the Shareholders Agreement defines Hall as majority shareholder and Dancy as minority shareholder, provides that the majority shareholder can purchase the interests of the minority shareholder upon termination of the minority shareholder's employment with the affiliated company, Metal Works of High Point, Inc. ("Metal Works"), and provides how shares will be valued in the event of such a repurchase. (*See* Shareholders Agreement §§ 1.12, 1.14, 4.1, 4.2, 4.3, 4.5.)

4.     The Shareholders Agreement includes the following paragraph:

Arbitration. All controversies relating to this Agreement shall be resolved by binding arbitration conducted in Greensboro, North Carolina under the North Carolina Uniform Arbitration Act and, *to the extent permitted by such Act, the Commercial Arbitration Rules of the American Arbitration Association.* There shall be a single arbitrator, who shall be a retired North Carolina Superior Court Judge. The arbitrator may award attorney's fees and expenses.

(Shareholders Agreement § 10.20 (emphasis added).)

5.     After Dancy resigned from Metal Works, Hall gave notice of his intent to purchase Dancy's Powder Works' shares and began the valuation process. (*See* Compl. ¶¶ 58–59.) Dancy objected to Hall's repurchase of his shares and contends that he, not Hall, is the majority shareholder of Powder Works. (*See* Compl. ¶¶ 61, 64.) Hall then initiated this action on April 20, 2018, filing the Complaint along with

a Notice of Designation of Action as Mandatory Complex Business Case Under N.C. Gen. Stat. § 7A-45(a). The case was designated as a mandatory complex business case by order of the Chief Justice and assigned to the undersigned. (*See* ECF Nos. 1, 2.)

6. Hall seeks a declaratory judgment stating that he is the majority shareholder of Powder Works as the owner of seventy-nine shares and Dancy is the minority shareholder of Powder Works as the owner of twenty-one shares. (*See* Compl. ¶¶ 69–71.) Alternatively, Hall asserts an equitable claim to remove the cloud on his title to Powder Works' shares. (*See* Compl. ¶¶ 83–86.) Hall also seeks an injunction prohibiting Dancy from contending that he is the majority shareholder of Powder Works and from interfering with the operation and management of Powder Works. (*See* Compl. ¶ 94.)

7. On May 8, 2018, in lieu of an Answer, Dancy filed this Motion, contending that Hall's claims and the rights of the parties addressed in the Complaint are subject to the mandatory arbitration provision of the Shareholders Agreement. (Mot. Dismiss or Stay & Compel Arbitration, ECF No. 9.)

8. The Court heard argument on the Motion on June 13, 2018. While the parties presented competing arguments as to whether the dispute falls within the scope of the arbitration provision, neither party discussed whether determining the arbitrability of this dispute is a matter to be decided by the arbitrator rather than the Court.

9. The dispute turns on who is Powder Works' majority owner. Dancy contends that Hall's claims relate to the Shareholders Agreement because Hall seeks to exercise rights provided to the majority shareholder by the Shareholders Agreement. Hall contends that his claims are broader than, and fall outside the scope of, the Shareholders Agreement. Hall acknowledges that he is attempting to exercise his right to repurchase Dancy's shares pursuant to the Shareholders Agreement, but contends that the dispute extends to Dancy's interference in corporate management. Hall stresses that the ultimate determination of who is majority owner will be resolved by evidence preceding and independent of the Shareholders Agreement.

10. When a party moves to compel arbitration, a court will first "address whether the [FAA] or the [North Carolina Act] applies to any agreement to arbitrate." *AP Atl., Inc. v. Crescent Univ. City Venture, LLC*, No. 15 CVS 14745, 2016 NCBC LEXIS 60, at *10 (N.C. Super. Ct. July 28, 2016) (alteration in original) (quoting *King v. Bryant*, 225 N.C. App. 340, 344, 737 S.E.2d 802, 806 (2013)). Ultimately, under the FAA or the North Carolina Act, "whether a dispute is subject to arbitration is a matter of contract law." *Raspet v. Buck*, 147 N.C. App. 133, 135, 554 S.E.2d 676, 678 (2001). The party seeking to compel arbitration "must show that the parties mutually agreed to arbitrate their disputes." *Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004) (quoting *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271–72, 423 S.E.2d 791, 794 (1992)).

11. Because the issue of arbitrability will be the same whether applying the FAA or the North Carolina Uniform Arbitration Act ("North Carolina Act"), the Court

need not discuss which act applies. *See Scottish Re Life Corp. v. Transamerica Occidental Life Ins. Co.*, 184 N.C. App. 292, 295, 647 S.E.2d 102, 104 (2007) (quoting *Volt Info. Scis v. Bd. of Trs.*, 489 U.S. 468, 477–78 (1989)) (explaining that "state law is preempted only 'to the extent that it actually conflicts with federal law,'" meaning the court must "determine whether application of the RUAA 'would undermine the goals and policies of the FAA'"); *Park v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 N.C. App. 120, 122, 582 S.E.2d 375, 378 (2003) (quoting *Saturn Distrib. Corp. v. Williams*, 905 F.2d 719, 723–24 (4th Cir. 1990)) ("The FAA only preempts state rules of contract formation 'which single out arbitration clauses and unreasonably burden the ability to form arbitration agreements. . . .'").

12. Typically, the Court decides issues of "substantive arbitrability," including "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *AP Atl., Inc.*, 2016 NCBC LEXIS 60, at *13 (quoting *Bailey v. Ford Motor Co.*, 244 N.C. App. 346, 351, 780 S.E.2d 920, 925 (2015)). To decide such issues, the Court must determine: (1) "whether the parties had a valid agreement to arbitrate," and (2) "whether 'the specific dispute falls within the substantive scope of that agreement.'" *Sloan Fin. Grp., Inc. v. Beckett*, 159 N.C. App. 470, 478, 583 S.E.2d 325, 330 (2003) (quoting *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)).

13. However, parties can contractually agree that the arbitrator, not the Court, will decide issues of substantive arbitrability. *See Gaylor, Inc. v. Vizor, LLC*, No. 15 CVS 839, 2015 NCBC LEXIS 102, at *15 (N.C. Super. Ct. Oct. 30, 2015)

(alteration in original) (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986)) ("The United States Supreme Court has held that '[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'"). Under the FAA, to overcome the presumption that the Court addresses issues of substantive arbitrability, a party must show "that the parties clearly and unmistakably intended for the arbitrator, instead of a court, to decide issues of substantive arbitrability." *AP Atl., Inc.*, 2016 NCBC LEXIS 60, at \*14 (quoting *Bailey*, 244 N.C. App. at 351, 780 S.E.2d at 925). "[T]he standard under the North Carolina Act to overcome the presumption is less exacting." *Id.*

14. Under either the FAA or the North Carolina Act, when the parties' arbitration agreement specifically incorporates the American Arbitration Association ("AAA") rules, such incorporation demonstrates that the parties clearly and unmistakably intended for the arbitrator to resolve disputes regarding arbitrability. *See Epic Games, Inc. v. Murphy-Johnson*, __ N.C. App. __, 785 S.E.2d 137, 144 (2016) (concluding that the parties "incorporation of the AAA rules demonstrate[s] that the parties agreed the arbitrator should decide issues of substantive arbitrability"); *see, e.g.*, *AP Atl., Inc.,* 2016 NCBC LEXIS 60, at \*15, 17–18 (concluding that "the parties delegated in clear and unmistakable terms the threshold issue of substantive arbitrability to the Arbitrator" because the parties' arbitration agreement stated that the arbitration "would be 'governed by the [AAA] Construction Industry Rules'"); *Gaylor, Inc.*, 2015 NCBC LEXIS 102, at \*18 (concluding that the arbitrability of the

claim at issue must be determined by the arbitrator because the arbitration agreement adopted the AAA Construction Industry Rules); *see also Archer & White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488, 493 (5th Cir. 2017) (quoting *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)) ("An arbitration agreement that expressly incorporates the AAA Rules 'presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'").

15. Here, the parties' arbitration provision specifically states that it is governed by the "North Carolina Uniform Arbitration Act and, to the extent permitted by such Act, the Commercial Arbitration Rules of the American Arbitration Association." (Shareholders Agreement § 10.20.) Rule 7 of the AAA Commercial Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA, Commercial Arbitration Rules and Mediation Procedures, Rule 7(a) (Oct. 1, 2013).

16. The Court finds and concludes that the parties clearly adopted the Commercial Rules of the AAA and thereby agreed that the arbitrator would determine whether the disputes between the parties are within the scope of the arbitration provision.

17. Accordingly, Hall's claims shall be submitted to binding arbitration. Consistent with section 1-569.7(g) of the North Carolina General Statutes, this action is stayed pending conclusion of that arbitration.

IT IS SO ORDERED, this the 27th day of June 2018.


/s/ James L. Gale
_____
James L. Gale
Chief Business Court Judge